IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| SHARON L. BAKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 09-0198-CV-W-ODS |
| ) | |
| UNION SECURITY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION (1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; (3) GRANTING DEFENDANT'S MOTION TO FILE A SURREPLY; AND (4) CANCELING PRETRIAL CONFERENCE AND TRIAL

Pending are the parties' opposing motions for summary judgment (Doc. 20, 22). Also pending is Defendant's motion for leave to file a surreply to Plaintiff's motion for summary judgment (Doc. 31). Plaintiff's motion for summary judgment is denied. Defendant's motion for leave to file a surreply and motion for summary judgment are granted.[1]

## I. INTRODUCTION

This is an action for disability benefits. Plaintiff is a 63-year-old former accountant for Full Employment Council, Inc. (FEC) and participant in the FEC Group Long Term Disability Insurance Benefit Plan (the Plan). The Plan is insured by Defendant pursuant to Group Policy Number G 35,943 (the Policy). The Plan and the Policy are governed by ERISA. Plaintiff underwent hammertoe[2] surgery on March 16,

---

[1] Defendant's surreply, attached as Exhibit A to its motion, is deemed filed.

[2] "Hammertoe is a contracture (bending) of one or both joints of the second, third, fourth, or fifth (little) toes." American College of Foot and Ankle Surgeons,

2006, and returned to work in May 2006. A postoperative complication required a second toe surgery and Plaintiff completed short term disability paperwork in June 2006. Plaintiff returned to work on a part time basis but developed an infection from the second toe surgery and stopped working on July 28, 2006.

On August 1, 2006, Defendant's Vocational Consultant (VC) conducted an onsite visit to Plaintiff's workplace to assess whether Plaintiff could return to work with reasonable accommodations. The VC completed an "Accommodation Assessment" describing Plaintiff's work station as "a typical cubicle." The copy machine, fax machine, and restrooms were within 20 feet of the cubicle and the entire workplace was wheelchair accessible. FEC indicated that Plaintiff would be permitted to park closer to a door near her workstation. FEC also indicated that it would provide Plaintiff an adjustable footstool and would allow Plaintiff to keep a wheelchair onsite. Despite these workplace accommodations, Plaintiff did not return to work. On August 30, 2006, FEC terminated Plaintiff from employment.

In October 2006 Plaintiff reported to Defendant for the first time a variety of symptoms and conditions, including a diagnosis of left-sided Meniere's disease[3] from 1994, a diagnosis of Raynaud's disease,[4] a pinched nerve, arthritis, and spasms in her back, hip and leg resulting in pain. Defendant informed Plaintiff that her claim for short term disability was transitioning into long term disability. In November 2006, Plaintiff sent Defendant a letter referencing medical records she had submitted for her claim. Some of those medical records were from Gregory Ator, M.D., Plaintiff's physician at the

---

Hammertoe, http://www.foothealthfacts.org/footankleinfo/hammertoes.htm (last visited June 14, 2010).

[3] Meniere's disease can cause severe dizziness, tinnitus, intermittent hearing loss, and the feeling of ear pressure or pain. U.S. National Library of Medicine and National Institutes of Health, Meniere's Disease, http://www.nlm.nih.gov/medlineplus/menieresdisease.html (last visited June 14, 2010).

[4] Raynaud's disease is a rare disorder of the blood vessels, usually in the fingers and toes. U.S. National Library of Medicine and National Institutes of Health, Raynaud's Disease, http://www.nlm.nih.gov/medlineplus/raynaudsdisease.html (last visited June 14, 2010).

University of Kansas Medical Center Department of Otolaryngology-Head and Neck Surgery.[5] Dr. Ator's medical records revealed that Plaintiff had hearing loss of significant proportions in her left ear (the ear affected by Meniere's disease). Plaintiff stated in her letter to Defendant however that Dr. Ator's medical records "don't pertain to the disability claim."

After gathering medical records, Jane Jenkinson, R.N., a member of Defendant's staff, conducted a Clinical Services Assessment in February 2007. Jenkinson concluded that the medical records did not evidence any ongoing, significant functional limitations. Similarly, a functional capacity evaluation (FCE) performed by HealthSouth at Defendant's request in April 2007 concluded that Plaintiff was "capable of performing work in the light physical demand category based on occasional and frequent material handling for an 8 hour day." Following the FCE, Dr. Daniel D. Zimmerman, M.D., P.A. reviewed Plaintiff's medical records and file material. Dr. Zimmerman concluded that Plaintiff "[was] able as of April 24, 2007 to perform light and sedentary work activity eight hours per day, five days per week, i.e. on a full-time basis." Defendant denied Plaintiff's claim for disability benefits in a letter dated May 31, 2007.

Plaintiff appealed Defendant's decision and in January 2008 Plaintiff supplemented her file with 482 pages of additional medical records. These records revealed that in May 2007 Plaintiff reported severe dizziness and nausea related to her Meniere's disease. A surgeon performed a labyrinthectomy[6] on Plaintiff's left ear, after which Plaintiff reported improvement in her dizziness with intermittent "waves of off-

---

[5] Otolaryngologists are commonly referred to as ear, nose, and throat physicians. American Academy of Otolaryngology–Head and Neck Surgery, What Is an Otolaryngologist?, http://www.entnet.org/HealthInformation/otolaryngologist.cfm (last visited June 18, 2010).

[6] Labyrinthectomy is a "destructive procedure used for Meniere's disease. The balance end organs are removed so that the brain no longer receives signals from the parts of the inner ear that sense gravity and motion changes. The hearing organ (cochlea) is also sacrificed with this procedure." Vestibular Disorders Association, Surgical Procedures for Vestibular Dysfunction, http://www.vestibular.org/vestibular-disorders/treatment/surgery.php (last visited on June 17, 2010).

balance." Preoperative estimates were that Plaintiff would be able to return to work in October 2007, and following surgery Plaintiff's dizziness continually improved. However, on October 16, 2007, Plaintiff required a third foot surgery related to her hammertoe condition. Follow-up treatment notes from December 7, 2007, state that Plaintiff's toes had "healed nicely" and that Plaintiff was "very pleased" with the results. Plaintiff's only restriction was to avoid tight-fitting shoes.

Plaintiff also supplemented her disability file with a Vocational Report obtained by Plaintiff's counsel from Keen Rehabilitation Services. The Keen report concluded:

> In terms of her current ability to function in a work setting, Ms. Baker is still under a doctor's care from her latest foot surgery. She has also continued to have balance problems from the Meniere's disease and admits that she is very deconditioned from her lack of activity over the last several months due to pain and extreme dizziness. Her current physical activity, as described in the subjective limitation section of this report, would indicate that she could not maintain any full-time employment at this time.

In addition the Keen report, Plaintiff submitted a Residual Functional Capacity Form completed by Plaintiff's regular treating physician, Dr. Phillip Martin, M.D. Dr. Martin opined that Plaintiff needed to lie down 4 hours per day and that Plaintiff suffered from debilitating fatigue. Dr. Martin further opined that Plaintiff suffered debilitating back pain from spinal stenosis and neuroforaminal stenosis and that Plaintiff would miss work more than three times per month. According to Dr. Martin, Plaintiff virtually had no ability to deal with the typical stress of a job (getting to work regularly and on time, dealing with supervisors, etc.).

On January 31, 2008, Plaintiff reported to Dr. Martin that she was experiencing "a lot of dizziness, wooziness and nausea." Plaintiff was later seen by Dr. Ator (her otolaryngologist) and reported to him that her dizziness was as severe as before her labyrinthectomy. Dr. Ator found that Plaintiff's dizziness "was triggered by a viral attack that [Plaintiff] got some time ago, with antibiotic treatment for congestion." Dr. Ator referred Plaintiff to Deborah Cooke, PT Ph.D., a vestibular therapist, to determine whether a medication adjustment and "vigorous physical activity" would improve

Plaintiff's symptoms. Plaintiff reported to Dr. Cooke that she spent 16 hours per day in bed due to dizziness and low back pain. Dr. Cooke noted that Plaintiff's balance performance at the clinic was "out of proportion" with her report of her symptoms, but nevertheless recommended vestibular rehabilitation, therapeutic activities, a home exercise program, and patient education regarding falls prevention. Dr. Cooke noted that Plaintiff achieved "[e]xcellent progress" through treatment, although back pain was also noted with increased activity. Plaintiff returned to Dr. Ator in May 2008, and Dr. Ator noted, "Overall [Plaintiff] has continued to have good progress. She has gone from a general dysequilibrium to now rare positional symptoms and in fact in early April she was essentially completely recovered. She has noted some setback with sinus problems." Dr. Ator concluded, "It looks like she has had a very good resolution of her symptoms, now that her orthopedic problems and a general compliance with vestibular therapy has improved."

Defendant hired an investigator to surreptitiously videotape Plaintiff's activities on June 10-11, 2008, and June 18, 2008. The recording shows that on June 11 Plaintiff was able to enter and exit her vehicle without any apparent difficulty. Plaintiff is also shown walking from her car to her home without a limp, an uneven stride, or any other abnormality. Later recordings show Plaintiff walking to and from her next door neighbor's home, driving her car, walking into a store and then returning to her vehicle, stopping at an ATM machine, and walking up steps at a post office carrying a box before returning to her car. Plaintiff exhibited no indication of disability while completing these tasks. Footage from June 18 reveals similar activity.

Robert Pick, M.D., an orthopedist, conducted a medical record review and provided a speciality-specific report concerning Plaintiff to Defendant. Dr. Pick noted that he left three phone messages for Dr. Martin (Plaintiff's regular treating physician) but never received a return call. Dr. Pick opined that from an orthopedic perspective neither Plaintiff's low back pain nor her foot condition precluded her from engaging in at least full-time light employment. Otolaryngologist Sarah H. Hodges, M.D., also conducted a review of Plaintiff's medical records and provided a specialty-specific report to Defendant. Dr. Hodges noted that she had contacted Dr. Martin and that he had

5

stated Plaintiff's dizziness had improved since February 2008. Based on this conversation and the improvement also noted by Dr. Ator after Plaintiff's labyrinthectomy, Dr. Hodges opined that Plaintiff had no restrictions or limitations on working or driving based on her Meniere's disease, although she later added that Plaintiff should be restricted from doing any work where significant balancing ability was necessary and should not operate heavy machinery.

In a letter dated August 27, 2008, Defendant granted Plaintiff disability benefits through December 7, 2007 (the date Plaintiff's toes were noted to have "healed nicely"), but denied benefits beyond that date. Defendant's Appeal Committee affirmed the decision, and Plaintiff subsequently filed this action to recover benefits.

## II. DISCUSSION

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). ERISA authorizes a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). "When a plan 'reserves discretionary power to construe uncertain terms or to make eligibility determinations . . . the administrator's decision is reviewed only for "abuse . . . of his discretion"' by the district court." *Manning v. American Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010) (citations omitted). Since the Policy in effect when Plaintiff's claim accrued[7] delegated to Defendant the "authority to determine eligibility for participation or benefits and to interpret the terms of the policy," the Court will review Defendant's denial of benefits for an abuse of discretion. "Under the abuse of discretion standard, the court must affirm

---

[7] A cause of action for plan benefits under ERISA generally accrues when the claim for benefits is formally denied. *See Cavegn v. Twin City Pipe Trades Pension Plan*, 223 F.3d 827, 830 (8th Cir. 2000). The Policy issued August 1, 2006 (US001126-US001154), was in effect when Defendant denied Plaintiff's claim.

the plan administrator's interpretation of the plan unless it is arbitrary and capricious." *Id.* (citation omitted). "To determine whether a plan administrator's decision was arbitrary and capricious, the court examines whether the decision was 'reasonable.' Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Id.* (citations omitted). A reasonable decision is one that is supported by substantial evidence. *See Midgett v. Washington Group Intern. Long Term Disability Plan*, 561 F.3d 887, 897 (8th Cir. 2009). "A plaintiff suing under [29 U.S.C. § 1132(a)(1)(B)] bears the burden of proving his entitlement to contractual benefits." *Horton v. Reliance Standard Life Ins. Co.*, 141 F.3d 1038, 1040 (11th Cir. 1998) (citing *Farley v. Benefit Trust Life Ins. Co.*, 979 F.2d 653, 658 (8th Cir. 1992)).

Substantial evidence supports Defendant's decision to deny benefits beyond December 7, 2007. Defendant denied Plaintiff benefits because she did not satisfy the Policy's "Occupation Test" for disability. The Occupation Test required Plaintiff to show that "an injury . . . or sickness . . . prevent[ed] [her] from performing at least one of the material duties of [her] regular occupation." The Policy defined "material duties" as "the sets of tasks or skills required generally by employers from those engaged in a particular occupation." In adjudicating Plaintiff's claim, Defendant identified the following material duties for an accountant: "working on a full-time basis as defined in the policy"; "preparing financial statements"; "analyzing records of financial transactions"; "develop, implement, modify and document budgeting, cost, general, property and tax accounting systems"; and "preparing reports such as budget analysis, and cost analysis." Medical evidence in Plaintiff's disability file established that as of December 7, 2007, Plaintiff's toes had "healed nicely," with the only restriction being that Plaintiff should avoid wearing tight shoes. In November 2007 Dr. Ator noted Plaintiff's balance continued to improve following her labyrinthectomy. Although Plaintiff experienced a return of her vertigo in February 2008, Dr. Ator attributed it to a "viral attack." Dr. Cooke noted Plaintiff's balanced improved with vestibular therapy, and in May 2008 Dr. Ator concluded that Plaintiff had a "very good resolution of her symptoms." Surveillance from June 2008 demonstrated Plaintiff was capable of walking short distances and running errands without any indication of impairment. Based on his review of the

medical file, Dr. Pick concluded that from an orthopedic perspective Plaintiff's back pain and foot operation would not prevent her from full time light work. Dr. Hodges similarly concluded that Plaintiff's Meniere's disease and acute sinusitis were not disabling. Based on this evidence, Defendant's denial of long term disability benefits beyond December 7, 2007, was not an abuse of discretion.

Plaintiff contends Defendant's decision was not supported by substantial evidence because she is completely deaf in her left ear. Plaintiff maintains it is "inconceivable" for a person with her hearing impairment to be expected to work as an accountant. This argument is inconsistent with Plaintiff's position at the administrative level that medical records documenting her hearing loss "don't pertain to the disability claim." The argument also lacks merit. Evidence indicates that Plaintiff had experienced hearing loss for years before 2006, so she apparently was able to perform her duties as an accountant while hearing-impaired. Plaintiff's evidence establishes at most that her left-ear deafness impaired her ability to locate where sounds originated and rendered her unable to understand what people were saying to her when there was background noise. The evidence does not establish that Plaintiff was prevented from performing a material duty of her occupation.[8] Plaintiff has not proven that Defendant's denial of benefits was unsupported by substantial evidence.

Plaintiff also argues that Dr. Martin's opinion she was disabled was more credible than Dr. Pick's and Dr. Hodge's opinions she was not disabled. This argument goes to the weight to be attributed to these opinions, and a district court reviewing for an abuse of discretion does not reweigh conflicting evidence. *See Cox v. Mid-America Dairymen, Inc.*, 965 F.2d 569, 573 (8th Cir. 1992). The abuse of discretion standard of review limits the Court to determining whether Defendant reasonably could rely on the opinions of Dr. Pick and Dr. Hodges in denying Plaintiff's claim. *See Manning*, 604 F.3d at 1038. Plaintiff attacks Dr. Hodges' opinion because it did not address how her job as an accountant would be limited by her left-ear deafness. Dr. Hodges' report specifically

---

[8] Plaintiff notably does not argue that Defendant's identification of the material duties of an accountant was erroneous.

acknowledged Plaintiff's profound hearing loss in her left ear, while also noting that Plaintiff had normal hearing in her right ear (supported by audiograms reviewed Dr. Ator in November 2007 and May 2008). Although Dr. Hodges did not explicitly state that Plaintiff's left-ear deafness would not impair her work as an accountant, that is the implication of her report. As for Dr. Pick's report, Plaintiff criticizes it for several unconvincing reasons, the first of which is that Dr. Pick was never asked about Plaintiff's health as of December 7, 2007, the date disability benefits were terminated. Dr. Pick was asked to address several questions in his medical record review, including what Plaintiff's active medical diagnoses were as of May 31, 2007 (the date Defendant initially denied Plaintiff's claim), and whether those diagnoses had changed. These questions encompased Plaintiff's health as of December 7, 2007, and beyond. Plaintiff also complains that Dr. Pick was not asked to comment on the Keen report (the report submitted by Plaintiff concluding she could not maintain full time employment), but that document was included for Dr. Pick's consideration in his record review, and there is no evidence he ignored it. Plaintiff additionally faults Dr. Pick for not commenting on Plaintiff's ability to perform the specific tasks of an accountant and for not commenting on whether her diagnoses and symptoms would cause her to miss work, but this criticism fails; Dr. Pick's statement that Plaintiff "certainly has the capacity to engage in full-time gainful employment at least in the light category" reasonably addressed Plaintiff's ability to work as an accountant without excessive absences. Plaintiff further argues that Dr. Pick's opinion was deficient because it was confined to orthopedic diagnoses, but orthopedics was Dr. Pick's specialty. Plaintiff has not identified any reason that would have precluded Defendant from reasonably relying on Dr. Pick's or Dr. Hodges' opinions in denying Plaintiff continued disability benefits.

Plaintiff lastly contends she is disabled because she would miss too much work for doctor visits. According to Plaintiff, from June 30, 2006, to December 7, 2007, she was treated on 86 different dates, for an average of about 4.7 days per month. Defendant points out that District Judge Nanette K. Laughrey rejected a similar argument made by Plaintiff's counsel in *Brown v. Astrue*, No. 08-4026-CV-C-NKL-SSA, 2008 WL 4151613, *2 (W.D. Mo, September 2, 2008). Judge Laughrey reasoned,

> [T]here is no evidence that such treatment requires a full day's absence or that Brown would be required to miss a working day in order to receive treatment. The fact that a claimant requires regular healthcare appointments does not necessarily indicate she cannot work on those days. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir.2000) (declining to assume that the claimant had to miss an entire day of work for her doctor's appointments). In this case, nothing in the record indicated Brown could not arrange her medical appointments around a work schedule or that she would need to miss a full day of work for her appointments.

*Id.* The same reasoning is applicable in Plaintiff's case. Moreover, Plaintiff's computation fails to take into account the improvement in her medical condition after December 7, 2007. The Court rejects Plaintiff's absenteeism argument.

### III. CONCLUSION

Plaintiff's motion for summary judgment is denied. Defendant's motion for summary judgment is granted. The pretrial conference set for July 1, 2010, and the trial set to begin August 3, 2010, are canceled.
IT IS SO ORDERED.

DATE: June 23, 2010

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT